M'cBRIDE, Judge'.
This case is before us on rehearing granted upon the application of defendant-appellee, George Persohn.
Gillis Esta brought this action against Persohn under the provisions of the Jones Act, 46 U.S.C.A. § 688, for personal injuries sustained on board a vessel owned by defendant, while the .vessel was engaged in shrimping operations in the Gulf of Mexico, about ten miles southeast of Grand Isle, Louisiana. As stated in our original opinion, Esta, who was an employee of defendant, was injured in an accident which
“occurred in the following manner: The vessel was what is known as a trawl boat which catches shrimp in a net known as a trawl, which is dropped from the stern and dragged behind the vessel, the front end being held open by two large boards known as doors. These hoards are rectangular and are about thirty inches in height and 'several feet long. They are so attached, one on each side of the front end of the trawl that the pressure of the water as they are pulled through it spreads them apart, one to the right, the other to the left, with the result that the opening between them into the trawl is -quite large. These boards are very heavy weighing about 200 pounds each, there being attached to the lower edge of each a piece of heavy metal so that each board will ‘ride’ upright as it is pulled through the water. After each haul the vessel is stopped and these boards are lifted to the rear deck and then the trawl itself is pulled in and the catch removed. Sometimes, because of rough weather, the ropes, which extend from the vessel to these boards, become twisted so that it is necessary to pull them to. the deck and -to remove the twist by turning the boards One way or the other. ■
“Plaintiff states that on 'the morning of the accident, as these boards were pulled to the deck, it was noticed that there was a twist i-n the ropes leading to one of them and that a third member of the crew, Cheramie, together with the defendant, attempted to straighten the board but that Cheramie, being younger and not having sufficient strength, could not do the job and the defendant, owner 'and master of the vessel, ■ ordered'plaintiff to' exchange' positions' with' Cheramie' and to remove -the twist by turning the board over. He says that'the board was partially on the deck, but that the end' extended but over the rail and that he put his foot upon this rail and reached out as far as he could to grasp and turn over the very heavy board, and that as he -was turning it over the board 'slipped and crashed down upon his foot causing the injury.”.
Plaintiff charged defendant with several specific acts of negligence, viz., (1) in not equipping the -vessel with' a whip line, (2) in not using the -power- winch, which was available for -use, in hauling the trawl -aboard the vessel, and- (3) in not stopping the vessel completely before attempting to adjust the twist which had developed in the trawl.
After thé first hearing of the case, we concluded, in finding for plaintiff, that the accident resulted either from the fact that there was no whip line available (it being conceded that there was none on the vessel), or from the fact that defendant, who was in complete charge of the operation, ordered plaintiff to raise the trawl board by hand instead of making use of other tackle, and that in either event there was negligence on the part of defendant.
Counsel have argued extensively pro and con as to what part a whip line plays in shrimping operations such as the vessel was engaged in at the time of the occurrence. The device, which is a line attached to a boom and pulled- by a power-driven drum, is used to lift the- trawl from the water and deposit it aboard the vessel. Plaintiff testified that a whip line is used especially to turn trawl boards .when they become twisted,. “because those .rigs.-are too heavy to handle by manpower.” . .Defendant and his witness, Plaisance, who has had considerable experience as an operator of shrimp boats, stoutly maintain that a whip line is not particularly employed for the purpose mentioned by Esta, but was chiefly designed to pull the.net up .when'the day’s work is over,' in order to. permit it to dry," and also to pull up the net so that grass may be removed from it.
*66 But, be that as it may, although the vessel was not equipped with a whip line, which is unquestionably widely used on vessels engaged in the shrimp fishing industry, there was on the vessel and available for use at the time, and in fact there was actually used by plaintiff, a power winch with a cable, which we appreciate from the testimony is somewhat comparable to a whip line and can be used for similar purposes.
Shortly before the trawl was raised, Esta was in the cabin engaged in cooking a meal for the crew. Persohn ordered the trawl “picked up,” and Esta was called from the cabin to operate the winch, the cable of which was attached to the trawl boards, and the net was hoisted from the water. The twist in one of the boards was then noticed, and after throwing the bag of the net overboard, Persohn, together with Cheramie, placed the left-hand board on deck and then endeavored to turn over the right-hand board to eliminate the twist, but they were physically unable to do so. Per-sohn and Cheramie struggled with the board for about ten to fifteen minutes, and Esta, in the meanwhile, was standing, watching their efforts, with his foot on the brake of the winch to keep slack from the cable. Persohn then ordered Esta to change places with Cheramie, and to remove the twist by turning the board, one end of which extended out beyond the rail. During the process of turning the board, it fell upon Esta’s foot.
Esta testified:
“Q. Did you use the winch on the boat before you started to turn the trawl-board? A. Yes. We used the winch to pull the trawl-board up.
“Q. When you got there, the winch had already gotten the trawl-board up to a spot where you could put your hand on it; is that right? A. No. The board was already in place. We were getting ready to throw it overboard.
“Q. In other words, you had used the winch to pull the board up, and got the twist out; is that right? A. No, sir.
“Q. Well, you just said you were getting ready to throw it over; didn’t you? A. No. You asked if we used the winch to pull the trawl-board up.
“Q. You. had used the winch on the boat to pull the trawl-board up to the point where you could reach it and take the twist out; hadn’t you? A. Yes.
“Q. Did you all get the twist out? A. Yes.
“Q. Then you were ready to throw it over again? A. Yes.
“Q. That’s the time — when you were ready to throw it over — that it fell on your foot? .A. When we turned it over.
“Q. When you turned it over, it hit your foot? A. Yes.
“Q. What did Captain Persohn or Alex Cheramie do to cause that? You said they both had their hands on the board. What did they do to cause that? A. Cheramie did not have his hands on the trawl-board then.
“Q. Well, what negligence was Persohn guilty of, or what did he do to cause you to get hurt by the board? A. Well, he didn’t have any whip-line.”
The record does not reflect, and we fail to comprehend what more could have been done with a whip line than could have been done with the winch and cable.
Esta complains that it was necessary to assume a precarious position, by placing one foot upon the rail and reaching out to grasp the end of the board which protruded over the rail, which unstable position caused the board to fall. Sight cannot be lost of the fact that it was Esta himself who operated the winch, and he made no attempt to explain why both boards were not brought to a position where it would not have been necessary to do any stretching or reaching over the rail for the end of the board. While Persohn and Cheramie labored during the ten or fifteen minute interval to remove the twist by turning the board over, Esta, who has been a fisherman for more than thirty years, stood at the winch and observed their activities. Though Esta claims that the board was in an unsafe position, he made no comment thereon, nor did he make any effort to move the board further in with the winch. Neither did he register any objection to tak *67 ing Cheramie’s place when ordered by Per-sohn to do so. ' The silence and inaction of Esta, under the circumstances related above, indicates to our minds that the situation was not dangerous, as Esta contends it was.
In a supplemental brief, counsel for plaintiff argues that: “ * * * The winch was not used to bring the board on deck * * *, nor was a whip line used to haul the board on deck where in either case the twist could have been straightened. It is not that defendant did not use the power winch, but * * * defendant was negligent and careless * * * in not using the power winch which was available for use to haul the trawl board on board the vessel, so that it could be straightened out on deck.”
We perceive no merit in that contention, as it seems to us that if the twisted board was brought into a faulty position, even if it be conceded such was the case, the blame should be attributed not to Persohn, but to Esta, who operated the winch and lifted the boards from -the water, and who had the opportunity and means of moving them if they were improperly positioned.
In our original opinion, we also concluded that it would have been safer procedure to have stopped the vessel, because a “considerable sea” added to the danger of the situation. Esta admits that the boat was moving only about two or three miles an hour, and said the Gulf was “kind of rough a little bit.” Cheramie’s version is that the water was “mighty rough.” Persohn insists that there was “very little sea,” and ■“it was not rough enough not to fish.”
The evidence fails to impress us that the operation of turning the board was rendered the more hazardous by not having stopped the vessel completely. Persohn testified that in order to keep the net alongside the boat while a twist is being straightened, a very slow or idle speed ahead must be maintained, otherwise the net will drift away from the boat.
After a painstaking study and analysis of the evidence, we are led to a different view as to the facts of the case, and readily conclude that plaintiff has fallen short of showing that his employer, Per-sohn, was guilty of any negligent act of commission or omission proximately causing or contributing to the accident. The law is well settled that a higher standard of care is required of the operator of a vessel than is required of an employer on shore, but, at any rate, to be successful in an action under the Jones Act, it is incumbent upon the claimant to prove negligence on the part of the employer.
For the above reasons, our original decree is recalled, and it is now ordered that the judgment appealed from be affirmed.
Original decree recalled, judgment of trial court affirmed.
JANVIER, J., takes no part.